UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN MILLO,  :
    Plaintiff,  :
　　　　　　　　　　　　　　　　　　:   No. 3:17-CV-01553 (VLB)
v.  :
　　　　　　　　　　　　　　　　　　:
HANOVER INSURANCE COMPANY,  :   May 14, 2018
    Defendant.  :
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:

## RULING AND ORDER

This action involves the decision by Hanover Insurance Company ("Hanover" or "Defendant") to deny worker's compensation benefits to John Millo ("Millo" or "Plaintiff") regarding injuries he sustained while working. Millo brings four claims against Hanover[1]: (1) negligence; (2) promissory estoppel; (3) common law bad faith; and (4) a violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110b(a), *et seq.*, and Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-816(1). Hanover has moved to dismiss the case in its entirety for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, this case is DISMISSED without prejudice for lack of subject matter jurisdiction.

## Background

Millo is a resident of Connecticut and is an officer and member of Housatonic Insurance & Financial Services, LLC ("Housatonic"). *See* [Dkt. 1-1 (Compl.) ¶¶ 1, 4–5, 13]. Hanover is an insurer licensed to provide worker's

---

[1] Millo initially sued Angela Cottle as well, but she has since been voluntarily dismissed.

1

compensation insurance in Connecticut. *Id.* ¶ 2. Hanover provided Housatonic worker's compensation insurance through the County Agency Inc. ("CAI")[2] of Shelton, CT. *Id.* ¶ 4. Millo requested to be covered under the Housatonic worker's compensation policy. *Id.* ¶ 13. The Complaint alleges Hanover accepted Housatonic's premium payments "with the full and complete understanding that Millo was to be a covered person" under the policies. *Id.* ¶ 16. It also alleges that Hanover took "affirmative steps" to ensure Millo would be covered and that Hanover owed Housatonic and Millo a duty to underwrite the policies. *Id.* ¶ 17.

Millo sustained injuries during two incidents that occurred on January 12, 2010, and May 31, 2012. *Id.* ¶ 3. After these injuries occurred, Millo submitted claims to Hanover to receive worker's compensation benefits, and Hanover investigated and accepted some of the compensability of Millo's claims, paying certain medical expenses arising from the incidents. *See id.* ¶¶ 6–8. However, on July 18, 2017, Hanover denied worker's compensation coverage to Millo. *Id.* ¶ 11. One reason for the denial was because Millo had failed to file a Form 75, which Hanover indicated meant that he did not accept the provisions of Connecticut's Worker's Compensation Act. *Id.* ¶ 12. It is Millo's position that, were Hanover to be successful in maintaining its denial of Millo's worker's compensation claims, such a result would be due to Hanover's failure to properly construct and underwrite the worker's compensation coverage. *Id.* ¶ 19. Hanover never advised Millo of the need to file a Form 75.

---

[2] CAI and Hanover had a relationship in which CAI could solicit, quote rates, bind, and sell Hanover insurance products to other insurance carriers upon which these policies would be converted to Hanover policies. *Id.* ¶ 24.

## Discussion

Hanover moves to dismiss on 12(b)(6) grounds, stating as a general matter that all claims must be adjudicated by the State of Connecticut Workers' Compensation Commission ("Commission") and more specifically that Counts One and Four are barred by the statute of limitations and Counts Two and Three fail to state a claim upon which relief may be granted. [Dkt. 13-1 (Mot. Dismiss) at 2]. Millo agrees with Hanover that the Commission has the authority to entertain the compensability of his workers' compensation claims. [Dkt. 18 (Opp'n) at 5]. He is worried, however, that he will suffer damages should the Commission decide it does not have jurisdiction over his case because he never filed a Form 75. *See id.* Milfindso challenges Hanover's arguments specific to each count.

The Court cannot address the substance of these claims at this juncture, because the claims are not yet ripe and accordingly there is no subject matter jurisdiction. *See Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998) ("Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "To be justiciable, a cause of action must be ripe—it must present a real, substantial controversy, not a mere hypothetical question." *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013). In essence, timing is everything—"[a] claim is not ripe if it depends upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Thomas v. Union*

*Carbide Agric. Prods. Co.*, 473 U.S. 568, 580, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985)).

Ripeness is founded on two principles: that Article III of the Constitution limits judicial power and that there are prudential reasons why a court may refuse to exercise jurisdiction. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003). The Second Circuit elucidated these principles with the following:

> These two forms of ripeness are not coextensive in purpose. Constitutional ripeness is a doctrine that, like standing, is a limitation on the power of the judiciary. It prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it. But when a court declares that a case is not prudentially ripe, it means that the case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay. It does not mean that the case is not a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III. Of course, in deciding whether "better" means later, the court must consider the likelihood that some of the parties will be made worse off on account of the delay. But that, and its degree, is just one—albeit important—factor the court must consider. Prudential ripeness is, then, a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial.

*See Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003) (emphasis in original). With constitutional ripeness and prudential ripeness in mind, the Court determines that it will not exercise jurisdiction over any of the four counts against Hanover.

First the Court finds the language from the Complaint demonstrates Counts One and Two are unripe for constitutional reasons. Namely, Millo has

not yet "suffered an injury in fact" because his injury has not yet occurred.  *See Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688 ("[T]o say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).  For Count One, the negligence claim, Millo alleges that "[i]f Hanover is successful in maintaining its denial of worker's compensation benefits because of the absence of Form 75, Millo *will be harmed* by being made responsible for payments for the services of physicians, physical therapists, medications, and other allied expenses," and that such harms will continue in the future.  [Dkt. 1-1 ¶¶ 20–21 (emphasis added)].  Millo also asserts that a "successful denial" of jurisdiction would be the result of the failure to properly construct and underwrite the policy and/or to advise County of same.  *Id.* ¶ 19.  This language makes clear that his injury is purely hypothetical, particularly since the parties readily admit the litigation before the Commission is ongoing.  *See* [Dkt. 18 at 3 ("The issue of whether or not the absence of the Form 75 precludes the further payment of workers' compensation benefits is a matter of ongoing litigation before the Workers' Compensation Commission.")].  For Count Two, the promissory estoppel claim, Millo asserts that "[i]f injustice results from Hanover's successful defense of the plaintiff's worker's compensation claims because of the absence of a [F]orm 75, this injustice can only be avoided by enforcing Hanover's promises previously made to insure John Millo." *Id.* ¶ 27.  Millo's claimed injuries are expressly and admittedly contingent on the a decision of the Workers

5

Compensation Commission yet to be rendered in a pending proceeding; and thus he has not yet been injured.

With respect to Counts Three and Four, the Complaint's language calls for a finding that the case is unripe on prudential grounds. The Complaint alleges Hanover made workers' compensation payments until its discovery in 2017 of the missing Form 75, which was its own error. *See id.* ¶¶ 31–36 (Count Three).[3] It is Millo's position that a denial of claims on the basis of the missing Form 75 shows bad faith and a CUTPA violation, which have led Millo to incur costs for litigation. *See id.* ¶ 38 (Count Three). Of note, Hanover argues that all four claims against it—including Count Three, common law bad faith, and Count Four, a CUTPA/CUIPA violation—fall under the exclusive jurisdiction of the Commission under Conn. Gen. Stat. § 31-284. Millo agrees and contends, "If the Form 75 defense fails at the WC Commission level and the WC Commission retains jurisdiction, then the plaintiff would agree that all claims must be brought in that context." [Dkt. 18 at 9]. Clearly this is a circumstance in which "the case will be better decided later and that the parties will not have constitutional rights undermined by the delay." *Am. Savings Bank, FSB v. UBS Financial Servs.*, 347 F.3d 436, 439 (2d Cir. 2003). It is the Court's conclusion that allowing the agency to determine jurisdiction (and then address the claims if jurisdiction exists) would "enhance the accuracy of [the courts'] decisions" and enable this Court "to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or

---

[3] The Complaint's numbering for Count Three is duplicative of Count Two. Accordingly, the Court specifies the numbers associated with Count Three where appropriate.

may require premature examination of, especially, constitutional issues that time may make easier or less controversial." See *Simmonds v. I.N.S.*, 326 F.3d at 357.

Finally, the question of whether Form 75 is a prerequisite to a sole proprietors' eligibility for workers compensation benefits raises a significant question of state law. Resolution of that issue would impact on the scope and operation of the workers compensation program which is the subject of a comprehensive state statutory scheme. Accordingly, faced with answering that question, this Court would consider whether the issue should be certified to the Connecticut Supreme Court.

## Conclusion

For the above reasons, the court declines to exercise jurisdiction for constitutional and prudential reasons. The case is dismissed without prejudice and the parties may move to reopen should jurisdiction become appropriate.

                                                IT IS SO ORDERED

                                                _____/s/_____

                                                Hon. Vanessa L. Bryant
                                                United States District Judge

Dated at Hartford, Connecticut: May 14, 2018